UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THE ANNUITY, WELFARE AND APPRENTICESHIP
SKILL IMPROVEMENT & SAFETY FUNDS OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 15, 15A, 15C & 15D, AFL-CIO,
*by Their Trustees James T. Callahan, Thomas A.
Callahan, Michael Salgo and Denise M. Richardson,*
CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS, *by its Chief Executive Officer Michael
A. Crabtree,* INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 15, 15A, 15C &
15D, AFL-CIO, *by its President & Business Manager
Thomas A. Callahan,*

**REPORT AND
RECOMMENDATION**
19-CV-4484-ENV-SJB

Plaintiffs,

-against-

NORTHEAST INDUSTRIAL MAINTENANCE, INC.,

Defendant.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of

the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO

("Local 15 Trust Funds"), Central Pension Fund of the International Union of Operating

Engineers ("CPF"), and International Union of Operating Engineers Local 15, 15A, 15C &

15D, AFL-CIO ("Local 15") (collectively "Plaintiffs"), through their authorized Trustees,

commenced this action on August 5, 2019 against Northeast Industrial Maintenance,

Inc. ("Northeast Industrial") for violations of the Employment Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and section 301 of the Labor

Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185, seeking to recover

benefit contributions due under their collective bargaining agreement. (Compl. dated

Aug. 5, 2019, Dkt. No. 1 ¶ 1).  On October 7, 2019, the Clerk of Court entered a certificate

of default against Northeast Industrial, (Clerk's Entry of Default dated Oct. 7, 2019, Dkt.

No. 7), and Plaintiffs filed a motion for default judgment, (Mot. for Def. J. dated Oct. 9,

2019 ("Mot."), Dkt. No. 9).  The Honorable Eric Vitaliano referred the motion to the

undersigned for a report and recommendation on October 25, 2019.  (Order Referring

Mot. dated Oct. 25, 2019).  For the reasons stated below, it is respectfully recommended

that Plaintiffs' motion be granted.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Local 15 is a labor organization under the LMRA, 29 U.S.C. § 152.  (Compl. ¶ 13).

Local 15 maintains its principal office at the same address as Local 15 Trust Funds.  (*Id.*

¶ 3).  The Local 15 Trust Funds, administered from 44-40 11th Street, Long Island City,

New York, are joint trustee funds under section 302 of the LMRA, 29 U.S.C. § 186, and

multi-employer/employee benefit plans under sections 3(3) and 3(37) of ERISA, 29

U.S.C. § 1002(3), (37).  (Compl. ¶¶ 3–4, 8).  They include the Local 15 Annuity Fund, a

pension benefit plan under section 3(2) of ERISA, 29 U.S.C. § 1002(2), which provides

retirement income to plan participants, and the Local 15 Welfare and Apprenticeship

Skill Improvement & Safety Funds, which are employee welfare benefit plans under

section 3(1) of ERISA, 29 U.S.C. § 1002(1), and which provide participants medical,

vacation, and training benefits.  (Compl. ¶¶ 6–7).  James T. Callahan, Thomas A.

Callahan, Michael Salgo, and Denise M. Richardson, the trustees and fiduciaries of the

Local 15 Trust Funds, have brought this suit on their behalf.  (*Id.* ¶ 5).

CPF is a joint trustee fund under section 302 of the LMRA, 29 U.S.C. § 186, an

employee benefit plan under section 3(2) of ERISA, 29 U.S.C. § 1002(2), and a multi-

employer/employee benefit plan under sections 3(3) and 3(37) of ERISA, 29 U.S.C.

§ 1002(3), (37). (Compl. ¶¶ 9, 11–12). Its principal place of business is 4115 Chesapeake Street, N.W., Washington, D.C. (*id.* ¶ 9), and it provides retirement income to eligible participants (*id.* ¶ 11). Michael A. Crabtree is the Chief Executive Officer of CPF and a fiduciary of the plan. (*Id.* ¶ 10).

The Local 15 Trust Funds and CPF administer their respective plans and benefits in accordance with trust agreements establishing each benefit plan (collectively, the "Trust Agreements"). (*See* Aff. of James M. Steinberg in Supp. of Pls.' Mot. for Default J. dated Oct. 7. 2019 ("Steinberg Aff."), Dkt. No. 12, ¶ 7; *see* Agreement and Decl. of Trust of the Local 15 Annuity Fund dated July 1, 1977 ("Annuity Fund Trust Agreement"), attached as Ex. D to Steinberg Aff., Dkt. No. 12; Agreement and Decl. of Trust Welfare Fund of the Local 15 dated July 1, 1975 ("Welfare Fund Trust Agreement"), attached as Ex. E to Steinberg Aff., Dkt. No. 12; Local 15, 15A, 15D Operating Engineers Apprenticeship, Skill Improvement, and Safety Fund Agreement and Decl. of Trust dated Oct. 1, 1969 ("Apprenticeship Fund Trust Agreement"), attached as Ex. F to Steinberg Aff., Dkt. No. 12; Restated Agreement and Decl. of Trust of CPF and Participating Employers dated Jan. 16, 2004 ("Pension Fund Trust Agreement"), attached as Ex. G to Steinberg Aff., Dkt. No. 12).

Northeast Industrial is a New York corporation with its principal place of business at 3 Browns Lane, Hawthorne, New York, (Compl. ¶ 15), and is an employer under section 3(5) of ERISA, 29 U.S.C. § 1002(5), and section 301 of the LMRA, 29

U.S.C. § 185, (Compl. ¶ 18).[1] The collective-bargaining agreement between Local 15 and the General Contractors Association of New York, Inc. ("GCA") applies to Northeast Industrial employees who perform heavy construction work. (Aff. of Thomas A. Callahan in Supp. of Pls.' Mot. for Default J. dated Oct. 7, 2019 ("Callahan Aff."), Dkt. No. 9 ¶¶ 3–4).[2] Under this CBA, Northeast Industrial is required to remit welfare, pension, annuity, apprentice, medical reimbursement, and vacation contributions to the Local 15 Trust Funds and CPF based on hours worked by employees covered by the CBA. (Compl. ¶¶ 19–20; *see* Agreement between GCA and Local 15 dated June 1, 2014–June

---

[1] The New York Secretary of State's website denotes Northeast Industrial as a domestic business corporation with its principal executive office at Friendly Road (without a number) in Mahopac, New York. *See J & J Sports Prods., Inc. v. La Parranda Mexicana Bar & Restaurante Co.*, No. 17-CV-4171, 2018 WL 4378166, at *1 n.3 (E.D.N.Y. Apr. 9, 2018) ("The Court can and does take judicial notice of information from the New York Secretary of State's website."); *Northeast Industrial Maintenance Inc.*, NYS Dep't State, https://www.dos.ny.gov/corps/bus_entity_search.html (search Business Entity Name field "Northeast Industrial Maintenance Inc."). The Court issued an Order to Show Cause for Plaintiffs to explain why service of process was proper on Northeast Industrial. (Order to Show Cause dated Aug. 18, 2020, Dkt. No. 15). Plaintiffs' response to the Order stated that Northeast Industrial conducts business from 3 Browns Lane, Hawthorne, New York, and that the Mahopac address may in fact be a residence of an officer of Northeast Industrial. (Decl. of James M. Steinberg in Further Supp. of Mot. for a Default J. dated Aug. 25, 2020 ("Steinberg Service Decl."), Dkt. No. 16, ¶¶ 3, 7). The Court concludes Northeast Industrial was properly served with process and subsequently served with the default judgment motion papers consistent with Local Rule 55.2 at 3 Browns Lane, Hawthorne, New York. (*See* Summons Returned Executed dated Aug. 22, 2019, Dkt. No. 5 at 2; *see also* Certificate of Service dated Oct. 9, 2019 ("Def. J. Serv."), Dkt. No. 14).

[2] Northeast Industrial is a party to the collective-bargaining agreement as a result of its agreement with Local 15, which incorporates the terms of the collective-bargaining agreement, including the requirement "to remit all contributions set forth under the applicable Association Collective Bargaining Agreements and all amendments, renewals and/or extensions thereto." (*See* Agreement between Local Union 14-14B and Local Union 15, 15A, 15C, and 15D and Northeast Industrial dated May 19, 2014 ("Northeast Industrial Agreement"), attached as Ex. B to Steinberg Aff., Dkt. No. 12 ¶ 4; Callahan Aff. ¶¶ 5–6).

30, 2018 ("CBA"), attached as Ex. C to Steinberg Aff., Dkt. No. 12 art. XI(B), §§ 1–9).[3] It is also required to deduct union and political action committee dues from employee wages and remit them to Local 15.[4] (Compl. ¶ 21; *see* CBA arts. XI(B), § 7, XV).

Pursuant to their rights under the CBA and Trust Agreements, Plaintiffs conducted an audit of Northeast Industrial's records for the period of July 1, 2015 to June 30, 2018. (Compl. ¶ 23). The results of the audit, completed June 13, 2019 and revised as of August 27, 2019, revealed that Northeast Industrial failed to make fringe benefit contributions and remit supplemental union dues payments and political action committee payments, totaling $24,371.22.[5] (Steinberg Aff. ¶ 9; *see also* Revised Audit Report dated Aug. 27, 2019 ("Revised Audit"), attached as Ex. H to Steinberg Aff., Dkt. No. 12, at 1). Northeast Industrial failed to pay the outstanding balance. (Compl. ¶¶ 25–26, 30; *see also* Aff. of Catherine Chase in Supp. of Pls.' Mot. for Default J. dated Oct. 7, 2019 ("Chase Aff."), Dkt. No. 10 ¶ 9).[6]

---

[3] The Agreements refer to a Joint Pension Fund of Local 15 instead of CPF; the Joint Pension Fund of Local 15 merged into CPF in 2000. (*See* Pls.' Mem. of Law in Supp. of Mot. for Default J. dated Oct. 9, 2019 ("Mem."), Dkt. No. 13 at 3 n.2; *see also* Steinberg Aff. ¶ 8; (Aff. of Thomas A. Callahan dated Oct. 9, 2019 ("Callahan Aff."), Dkt. No. 9 ¶ 6).

[4] Supplemental dues and political action committee payments are included in the stamps purchased from and processed through Local 15 Trust Funds, and these payments are forwarded to Local 15. (Callahan Aff. ¶ 7).

[5] This amount consists of $22,710.78 of ERISA contributions, including interest, and $1,660.44 of non-ERISA contributions owed for the period of July 1, 2015, through December 31, 2017. (Steinberg Aff. ¶ 9; Statement of Damages dated Oct. 9, 2019 ("Statement of Damages"), attached as Ex. 1 to Mot., Dkt. No. 8).

[6] Northeast Industrial submitted additional documentation for the audit after Plaintiffs filed the Complaint that is the basis of the revised audit report. (Steinberg Aff. ¶ 9).

The Complaint seeks a judgment against Northeast Industrial for contributions due to Local 15 Trust Funds and CPF, plus prejudgment interest; unpaid union dues and political action committee payments, plus prejudgment interest; liquidated damages; attorney's fees; audit fees; and costs. (Compl. at 7–8).

Northeast Industrial was served with a copy of the summons and Complaint on August 21, 2019, by service on Steve Berlingo, the Managing Agent of Northeast Industrial who was authorized to accept service, at Northeast Industrial's address of 3 Browns Lane, Hawthorne, New York 10532. (Summons Returned Executed dated Aug. 22, 2019 ("Summons Returned Executed"), Dkt. No. 5 at 2). Northeast Industrial failed to appear, answer, or otherwise respond to the Complaint. Plaintiffs sought, (Req. for Certificate of Default dated Oct. 2, 2019, Dkt. No. 6), and the Clerk of Court entered, a certificate of default, (Certificate of Default dated Oct. 7, 2019, Dkt. No. 7). Plaintiffs filed a motion for default judgment on October 9, 2019. (*See* Mot.). Judge Vitaliano referred the motion to the undersigned for report and recommendation. (Order Referring Mot. dated October 25, 2019).

The motion for default judgment seeks $20,525.00 in principal for delinquent ERISA contributions; interest on the ERISA principal amount through the date of entry of final judgment; $2,052.50 in liquidated damages on the ERISA contributions; $1,660.44 in principal for non-ERISA contributions; and interest on the non-ERISA contributions from a midpoint between October 1, 2016, and the date of entry of final judgment through the date of judgment. (Statement of Damages). Plaintiffs also seek $3,420.00 in attorneys' fees, $3,927.95 in audit fees, and $460.00 in costs. (*Id.*).

Plaintiffs mailed the motion papers at Northeast Industrial's last known business address. (*See* Def. J. Serv.). Northeast Industrial has not responded.

<u>DISCUSSION</u>

I.    <u>Entry of Default</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2).

Here, the Clerk entered a default against Northeast Industrial on October 7, 2019. (Certificate of Default dated Oct. 7, 2019, Dkt. No. 7). Before reaching the question of liability or damages, the Court must next determine whether Northeast Industrial's conduct is sufficient to warrant entry of default judgment.

In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, the failure by Northeast Industrial to respond to the Complaint demonstrates the default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff's motion for default judgment).  Northeast Industrial had sufficient notice of the present litigation because its Managing Agent, who was authorized to accept service, Steve Berlingo, was properly served with the summons and Complaint on August 21, 2019, at Northeast Industrial's address of 3 Browns Lane, Hawthorne, New York 10532.  (Summons Returned Executed at 2).  The motion for default judgment and all supporting papers were also served via U.S. mail at this same address.  (Def. J. Serv.).  Plaintiffs had a reasonable basis to believe that 3 Browns Lane in Hawthorne, New York is Northeast Industrial's principal place of business and would be an appropriate location to serve process.  In response to an Order to Show Cause, Plaintiffs filed a declaration and documentation demonstrating that Plaintiffs facilitated an audit with known representatives of Northeast Industrial by sending documentation to 3 Browns Lane and that the representatives confirmed receipt of documents.  (*See* Steinberg Service Decl. ¶¶ 3–7).  In addition, Plaintiffs filed evidence indicating that Northeast Industrial equipment is used at the same address and that another District Court recently granted a motion for default judgment against Northeast Industrial in a case where service of process was effectuated at the same address.  (*Id.* ¶ 7).  Thus, Plaintiffs used a correct address to serve process and notify Northeast Industrial of the default judgment motion.

Notwithstanding this notice and service, Northeast Industrial did not respond to the Complaint, did not appear, and has not attempted to defend itself in this action,

which constitutes a willful default. *See, e.g.*, *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way.  Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude there is any meritorious defense to the allegations because Northeast Industrial did not appear and did not present evidence of such a defense.

> "[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment."  If a defendant presents no defense to the court, the allegations in the complaint are deemed admitted.

*Id.* (quoting *Krevat v. Burgers To Go, Inc.*, No. 13-CV-6258, 2014 WL 4638844, at *6 (E.D.N.Y. Sept. 16, 2014)) (citation omitted); s*ee, e.g.*, *Indymac Bank*, 2007 WL 4468652, at *1 ("[T]he Court is unable to determine whether these defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court.").

The third and final factor permits entry of a default judgment because Plaintiffs, the non-defaulting parties, would be prejudiced if their motion for default judgment were denied "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, 2009 U.S. Dist. LEXIS 6074 (Jan. 26, 2009); *see also Sola Franchise Corp.*, 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default

judgment, Plaintiffs would be unable to recover for the claims adequately set forth in the Complaint").

As a result, all three factors permit entry of default judgment. The Court now turns to the liability imposed, damages, and other relief to be awarded in such a judgment.

II.     Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation) (quotation omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2020) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." (footnote omitted)).

Plaintiffs have asserted causes of action under section 515 of ERISA and section 301 of the LMRA. (*See* Compl. ¶¶ 22–32). Section 515 of ERISA requires that "[e]very

employer who is obligated to make contributions to a multiemployer plan under the terms . . . of a collectively bargained agreement shall . . . make such contributions." 29 U.S.C. § 1145. Section 301 of the LMRA provides a cause of action against an employer in an industry affecting commerce for the "violation of contracts between [the] employer and a labor organization." 29 U.S.C. § 185(a). "Under Section 301 of the LMRA, an employer may be held liable for failing to pay assessments or failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement." *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011) (citing *Brown v. C. Volante Corp.*, 194 F.3d 351, 354 (2d Cir. 1999)), *report and recommendation adopted*, 2011 WL 5402898 (Nov. 4, 2011).

In the Complaint, Northeast Industrial is alleged to be an employer within the meaning of ERISA and an employer in an industry affecting commerce under the LRMA. (Compl. ¶ 18). The Local 15 Trust Funds and CPF are multi-employer/employee benefit plans as defined by ERISA, (*id.* ¶¶ 8, 12), and both are "joint trustee funds established by various trust indentures pursuant to Section 302 of the LMRA," (*id.* ¶¶ 4, 9).[7] By virtue of its membership in the GCA, Northeast Industrial is bound by the CBA negotiated by Local 15 and the GCA, which requires it to remit contributions, supplemental union dues, and political action committee payments to Plaintiffs. (*Id.*

---

[7] Local 15 is a labor organization under the LMRA, 29 U.S.C. § 152. (Compl. ¶ 13).

¶¶ 19–21; *see also* CBA art. XI(B), §§ 1–9)).[8]  Additionally, Northeast Industrial agreed "to be bound to all the agreements and declarations of trusts, amendments and regulations, thereto, referenced in the applicable Association Collective Bargaining Agreements." (Northeast Industrial Agreement ¶ 4).  Plaintiffs allege Northeast Industrial failed to make required payments from July 1, 2015, through June 30, 2018, as required by these agreements.  (Compl. ¶¶ 24, 29).

These allegations are sufficient to establish Northeast Industrial's liability in an ERISA and LMRA action.  *See, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. Coastal Envtl. Grp. Inc.*, No. 18-CV-5791, 2019 WL 5693916, at *5 (E.D.N.Y. Aug. 30, 2019), *report and recommendation adopted*, Order (Mar. 31, 2020); *Trs. of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 16-CV-318, 2018 WL 4268907, at *3–4 (E.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4266038 (Sept. 5, 2018); *Sullivan*, 2011 WL 5401987, at *3 ("Plaintiffs allege that Marble Unique Corp. failed to make contributions to the Funds in accordance with the CBA.  Marble Unique Corp.'s failure to make the required contributions constitutes a violation of ERISA. . . .  [P]laintiffs allege that Marble Unique Corp. failed to pay required dues and assessments to Local 1 as required by the CBA.  This failure to pay dues and assessments

---

[8] The CBA requires Northeast Industrial to make contributions to the "Joint Pension Fund of the International Union of Operating Engineers, Locals No. 15, 15A, 15C, 15D" rather than the CPF.  (*See* CBA art. XI(B), § 2).  The Joint Pension Fund of Local 15 merged into CPF in 2000, and the Joint Pension Fund of Local 15 now collects contributions from employers and forwards them to CPF pursuant to a service agreement between the two funds.  (Steinberg. Aff. ¶ 8; *see also* Callahan Aff. ¶ 6).  Because the CBA binds members of the GCA to the individual trust agreements, (*see* CBA Art. XI(B), § 11, Steinberg Aff. ¶ 6-7)), Northeast Industrial is bound by the Pension Fund Trust Agreement associated with CPF.

constitutes a breach of CBA, and thus, Marble Unique Corp. is liable under Section 301 of the LMRA."); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (adopting report and recommendation) ("The allegations in plaintiff's complaint establish the elements of liability required to state a claim under section 515 of ERISA, 29 U.S.C. § 1145[.] Plaintiff alleges that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions.").

III.    Damages and Other Monetary Relief

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quoting *Ann Taylor, Inc. v. Interstate Motor Carrier, Inc.*, No. 03-CV-7502, 2004 WL 2029908, at *3 (S.D.N.Y. Sept. 13, 2004)), *report and recommendation adopted*, 2012 WL 1354481 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (adopting report and recommendation) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and

recommendation) (collecting cases).  Under Rule 55(b)(2), "it [i]s not necessary for the District Court to hold a hearing" to determine the amount of damages "as long as it ensured that there was a basis for the damages specified in a default judgment."  *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

A plaintiff who has established liability under section 515 of ERISA "is entitled to an award of: 1) the amount of unpaid contributions; 2) interest on the unpaid contributions; 3) liquidated damages; 4) reasonable attorney's fees and costs, and 5) such other legal and equitable relief as the court deems appropriate."  *Lanzafame v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 257 (E.D.N.Y. 2007) (citing 29 U.S.C. § 1132(g)(2)), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 15218 (Feb. 28, 2008); *see also Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1504 n.2 (2d Cir. 1995); *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs Loc. 14-14B v. NAMOW, Inc.*, No. 17-CV-1469, 2018 WL 1440545, at *6 (E.D.N.Y. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1440542 (Mar. 22, 2018).  "An award of damages is also available under LMRA for those contributions not covered by ERISA but unpaid or paid late in violation of a collective bargaining agreement . . . or other contract."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operation Eng'rs, Loc. 15, 15A, 15C, 15D v. A.G. Constr. Corp.*, No. 13-CV-3590, 2014 WL 354647, at *4 (E.D.N.Y. Jan. 31, 2014) (adopting report and recommendation).  "LMRA damages are limited to those permitted in the relevant CBA and trust agreements."  *Id.*

Plaintiffs seek $20,525.00 in delinquent ERISA contributions, $1,629.44 in unpaid supplemental union dues, and $31.00 in unpaid political action committee payments based on the Revised Audit.  (*See* Statement of Damages; Revised Audit at 1; Aff. of Lisa Madeiras in Supp. of Pls.' Mot. for Default J. dated Oct. 7, 2019 ("Madeiras Aff."), Dkt. No. 11 ¶ 2).  Lisa Madeiras, a payroll audit manager at the accounting firm of Schultheis & Panettieri, LLP retained by Plaintiffs, (Madeiras Aff. ¶ 1), provided a detailed explanation of how the audit was conducted, namely by comparing Northeast Industrial's payroll records with Local 15 Trust Funds' stamp redemption reports for the period to calculate the total hours for which amounts were owed, (*id.* ¶¶ 3–5).[9]  The total hours were then multiplied by the applicable rates, resulting in the total amounts due. (*Id.* ¶ 5; *see also* Local Union 15 & 15A Wage Scale Schedule dated July 1, 2015 to June 30, 2016, attached as Ex. I to Steinberg Aff., Dkt. No. 12).

The Court has reviewed the revised audit and independently calculated and confirmed the amounts due based on hours worked and rates contained in the Wage Scale Schedules.  Having no basis to conclude that the underlying rates or hours worked are incorrect, the Court finds that Plaintiffs' calculations are correct and recommends awarding a total of $20,525.00 for delinquent ERISA contributions, $1,629.44 in unpaid supplemental union dues, and $31.00 in unpaid political action committee for the period of July 1, 2015, to June 30, 2018.  *See, e.g.*, *Coastal Envtl. Grp. Inc.*, 2019 WL 5693916, at *6; *A.G. Constr.*, 2014 WL 354647, at *5 ("The auditors reviewed the

_____

[9] The auditor gave Northeast Industrial "credit for any fringe benefit stamps purchased but not redeemed by the employees/members."  (Madeiras Aff. ¶ 4).

employer's general ledgers, cash disbursement journals, corporate tax returns, and invoices to determine if there were unreported earnings of individuals for work performed and their report includes schedules supporting their findings. Assuming, as I do, the factual detail of the hourly contribution rates and unreported hours to be correct, the auditors' calculations appear accurate. I therefore recommend that the Local 15 Trust Funds be awarded $5636.00 for unpaid contributions for the period of July 1, 2007 through July 30, 2011." (alteration, quotation, and citation omitted)); *Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc.*, No. 11-CV-5742, 2013 WL 2120338, at *5 (E.D.N.Y. Apr. 3, 2013) (recommending award of unpaid contributions based on an audit that "was prepared by comparing gross wages in the payroll records with Form 941, WT4-B, NYS-4, W-2 totals; comparing wage rates in employer's payroll records with hourly rates set forth in union wage schedules; comparing total payroll hours for all bricklayers with total hours reported to the Funds; and comparing hours reported on show steward reports to total payroll hours for each bricklayer" (quotation omitted)), *report and recommendation adopted*, 2013 WL 2120318 (May 15, 2013).

B.     Interest

Plaintiffs seek $2,185.78 in interest through April 9, 2019 on the delinquent ERISA contributions, and additional interest at a rate of 6% per year—with the exception of pension contributions at a rate of 9%—from April 10, 2019 through the date of final judgment. (Statement of Damages at 1; Revised Audit at 1–3). Plaintiffs also seek interest on the delinquent non-ERISA contributions, the supplemental union dues and Political Action Committee payments, at a rate of 9% pursuant to N.Y. C.P.L.R § 5004 from an intermediate date of October 1, 2016, through the date of entry of judgment. (Statement of Damages at 1).

As to the interest for delinquent ERISA contributions, "[s]ection 502 of ERISA provides that 'interest on unpaid contributions shall be determined by using the rate provided for under the plan, or if none, the rate prescribed under section 6621 of Title 26.'" *Primo Brick, Inc.*, 2013 WL 2120338, at *5 (quoting 29 U.S.C. § 1132(g)(2)). Here, the Trust Agreements provide that interest on delinquent contributions to CPF is calculated at a rate of 9% per year, (Pension Fund Trust Agreement art. IV, § 4.5(c)), and that interest on delinquent contributions to the Local 15 Trust Funds is calculated at 6% per year. (Amendment to the Annuity Fund Trust Agreement dated Mar. 13, 2014 ("Annuity Fund Trust Agreement Amendment"), attached as Ex. D to the Steinberg Aff., Dkt. No. 12; Amendment to the Welfare Fund Trust Agreement dated Mar. 13, 2014 ("Welfare Fund Trust Agreement Amendment"), attached as Ex. E to the Steinberg Aff. § 8; Amendment to the Apprenticeship Fund Trust Agreement dated Mar. 13, 2014 ("Apprenticeship Fund Trust Agreement Amendment"), attached as Ex. F to the Steinberg Aff., Dkt. No. 12 § 6). Plaintiffs submitted an affidavit explaining their interest calculations, (*see* Madeiras Aff. ¶¶ 6–7; *see also* Revised Audit at 1–3)), and the Court has independently calculated the daily rate of interest as set out in the chart below.

Local 15-15A Daily Interest

| Fund | Interest |
|------|----------|
| Welfare | $0.80 |
| Pension | $1.06 |
| Annuity | $1.23 |
| Apprentice | $0.09 |
| MRA | $0.13 |
| Vacation | $0.42 |
| **Total** | **$3.73** |

Plaintiffs are, therefore, entitled to $2,185.78 in interest through April 9, 2019 on the delinquent ERISA contributions, plus an additional $3.73 in interest per day from that date until final judgment is entered. *See, e.g.*, *Coastal Envtl. Grp. Inc.*, 2019 WL 5693916, at *7 (recommending interest at the rate provided for in the trust agreements); *A.A. Danzo Sanitation*, 2018 WL 4268907, at *5 (same); *Primo Brick, Inc.*, 2013 WL 2120338, at *5 ("Pursuant to the CBA, the applicable interest rate on delinquent contributions to the Funds is 10% per annum. Therefore, 10% interest is due to plaintiffs on defendant's delinquent contributions to the Funds." (citation omitted)); *LaBarbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 352 (E.D.N.Y. 2009) (adopting report and recommendation) ("Under the terms of the Trust Agreement and 29 U.S.C. § 1132(g)(2), plaintiffs are entitled to an award of interest for the period of delinquency. The CBA and the Trust Agreement provide for interest to be calculated at the rate of 18% per annum for the period of delinquency. Having reviewed the Jones, Rasalingam, and Cody Declarations and supporting documentation, the Court finds plaintiffs' calculation of interest to be accurate. Further, pursuant to 29 U.S.C.

§ 1132(g)(2) and the Trust Agreement, plaintiffs are entitled to additional interest, calculated at the same rate, up to the date that judgment is finally entered." (citations omitted)).

"With respect to . . . Non-ERISA Plans, the Second Circuit permits an award of prejudgment interest for LMRA claims at the Court's discretion and at a rate within the Court's discretion." *Omega Commc'n Servs.*, 543 F. Supp. 2d at 162 (citing *Lodges 743 & 1746, Int'l Ass'n of Machinists v. United Aircraft Corp.*, 534 F.2d 422, 446–47 (2d Cir. 1975)); *accord Primo Brick, Inc.*, 2013 WL 2120338, at *5. "In awarding interest, a court may look to state law to determine an appropriate rate." *Sullivan*, 2011 WL 5401987, at *7 (quoting *Lanzafame v. Dana Restoration, Inc.*, No. 09-CV-873, 2011 WL 1100111, at *4 (E.D.N.Y. Mar. 22, 2011) (adopting report and recommendation)). New York C.P.L.R. § 5004 provides that "[i]nterest shall be at the rate of nine per centum per annum, except where otherwise provided by statute." N.Y. C.P.L.R. § 5004; *see also N.Y.C. Dist. Council of Carpenters v. Trinity Phoenix Constr. Corp.*, No. 17-CV-609, 2018 WL 1521862, at *5 (E.D.N.Y. Jan. 10, 2018) ("Where interest is awarded, the common practice among courts within the Second Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law." (quotations omitted)), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 41194 (Mar. 12, 2018).

Plaintiffs seek interest on the delinquent non-ERISA contributions at a rate of 9% per year beginning on October 1, 2016 through the date of final judgment. (Statement of Damages; Steinberg Aff. ¶ 14(i)). Plaintiffs argue pre-judgment interest should accrue from October 1, 2016 because it "is the midpoint date that this portion of the scheduled deficiency arose." (Mem. of Law in Supp. of Pls.' Mot. for Default J. Against Def. Northeast Industrial ("Mem."), Dkt. No. 13 at 16).

New York law permits interest to be computed "from a single reasonable intermediate date" when damages accrue over time.  N.Y. C.P.L.R. § 5001(b); *see Bricklayers Ins. & Welfare Fund v. Golden Vale Constr., Inc.*, No. 06-CV-1028, 2007 WL 3232244, at *7 (E.D.N.Y. Oct. 31, 2007) (adopting report and recommendation that calculated interest from a reasonable date under § 5001(b) in an ERISA default judgment).  "[S]ection 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest."  *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994).  The Court finds that October 1, 2016, the approximate midpoint date of the delinquency period, is a reasonable date to begin calculating interest.[10]  *See, e.g., Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Manhattan Plumbing Corp.*, No. 08-CV-3036, 2009 WL 5821676, at *5 n.4 (E.D.N.Y. Oct. 8, 2009) ("New York law, which federal courts frequently apply in calculating interest in ERISA cases, provides that when damages are incurred over a period of time, prejudgment interest may be calculated from a single reasonable intermediate date.  Therefore, plaintiffs' calculation from the midpoint of the due dates is appropriate." (quotations and citations omitted)), *report and recommendation adopted in relevant part*, 2010 WL 456870 (Feb. 3, 2010); *Alston v. Northstar La Guardia LLC*, No. 10-CV-3611, 2010 WL 3432307, at *3–4 (S.D.N.Y. Sept. 2, 2010) ("Consistent with [section 5001(b)], courts deciding damage awards in ERISA cases routinely calculate prejudgment interest from a midpoint date in the delinquency period"), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 146684 (Sept. 27, 2010).

---

[10] Even though the audit period covered July 1, 2015, to June 30, 2018, the delinquencies occurred between July 1, 2015, and December 31, 2017.  (*See* Steinberg Aff. ¶ 9).

On this basis, the Court has calculated the daily interest as follows: $0.40 on unpaid supplemental union dues and $0.01 on unpaid political action committee payments. Collectively, Plaintiffs are entitled to pre-judgment interest on these amounts at a rate of $0.41 per day from October 1, 2016 until final judgment is entered.

C.     Liquidated Damages

Plaintiffs seek liquidated damages on the delinquent ERISA contributions at a rate of 10%, totaling $2,052.50. (*See* Statement of Damages; Steinberg Aff. ¶ 14(d)).

"Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements." *Sullivan*, 2011 WL 5401987, at *6 (citing 29 U.S.C. § 1132(g)(2)(C)); *see also Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773, 2019 WL 1130729, at *7 (E.D.N.Y. Feb. 11, 2019), *report and recommendation adopted*, 2019 WL 1128356 (Mar. 12, 2019). The Plaintiffs seek, and the Trust Agreements permit, liquidated damages of 10% of the unpaid contributions owed to the relevant fund.[11] The amount of ERISA contributions owed is $20,525.00, and thus Plaintiffs are entitled to $2,052.50 in liquidated

---

[11] The Annuity Fund Trust Agreement, Welfare Fund Trust Agreement, and Apprenticeship Fund Trust Agreement provide for liquidated damages calculated as 10% of the unpaid contributions. (Annuity Fund Trust Agreement Amendment; Welfare Fund Trust Agreement Amendment art. VII, § 8; Apprenticeship Fund Trust Agreement Amendment art. V, § 6). The Pension Fund Trust Agreement provides for liquidated damages of "up to twenty percent (20%)." (Pension Fund Trust Agreement art. IV, § 4.5(b)). However, "to maintain consistency between the[ ] Plaintiffs," Plaintiffs only seek 10% in liquidated damages on contributions owed to the CPF. (Mem. at 11).

damages.[12]  *See, e.g.*, *Primo Brick, Inc.*, 2013 WL 2120338, at *6 ("Here, plaintiffs' CBA provides for liquidated damages in the amount of twenty percent of the unpaid contributions if the Funds are required to sue to collect delinquent contributions. Twenty percent of $46,458.82, which is the total amount of contributions owed to the Funds at the commencement of this lawsuit, is $9,291.76.  Therefore, I respectfully recommend that plaintiffs should be awarded liquidated damages in the amount of $9,291.76." (citation and footnote omitted)); *Finkel v. Detore Elec. Constr. Co.*, No. 11-CV-814, 2012 WL 1077796, at *10 (E.D.N.Y. Mar. 6, 2012) ("The CBAs provide for liquidated damages in an amount equal to 20% of the delinquent contributions for each plan.  Therefore, the 20% rate pursuant to the CBAs and ERISA will be utilized in assessing liquidated damages." (citation omitted)), *report and recommendation adopted*, 2012 WL 1078470 (Mar. 30, 2012).

IV.     Attorney's Fees and Costs

Plaintiffs seek $3,420.00 in attorney's fees for nine hours of work on the case, all of which were billed by James M. Steinberg ("Steinberg") at a rate of $380 per hour. (Steinberg Aff. ¶¶ 15–17; *see also* Statement of Damages).  Plaintiffs also seek $460.00 in costs, consisting of the $400 filing fee and a $60 process server fee.  (Statement of Damages at 1; Steinberg Aff. ¶ 14(g)).  Finally, Plaintiffs seek $3,927.95 in audit fees. (Statement of Damages at 1; Steinberg Aff. ¶ 14(f)).

---

[12] The requested amount of $2,052.50 is actually less than the amount of interest owed on delinquent ERISA contributions, which totaled $2,185.78 even without considering the daily interest through judgment.  (*See supra* pp. 15-20).  Although Plaintiffs would be entitled to the greater amount—as between the interest on unpaid contributions and what is provided in the Trust Agreements, *see* 29 U.S.C. § 1132(g)(2)(C)—Plaintiffs only request $2,052.50, (*see* Mem. at 10–11).

A.     Attorney's Fees

ERISA provides for recovery of reasonable attorney's fees upon a judgment enforcing payment of delinquent contributions. 29 U.S.C. § 1132(g)(2)(D); *Lanzafame v. L & M Larjo Co.*, No. 03-CV-3640, 2006 WL 2795348, at *6 (E.D.N.Y. Sept. 26, 2006) (adopting report and recommendation) ("Section 1132(g) mandates an award of reasonable attorney's fees in ERISA actions brought by fiduciaries to enforce the terms of a collectively bargained agreement."); *see, e.g.*, *Omega Commc'n Servs.*, 543 F. Supp. 2d at 165 (awarding attorney's fees in an ERISA default judgment).

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. *Id.* The next step is to determine the reasonableness of the hours expended by counsel. *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4–5 (E.D.N.Y. Feb. 26, 2007), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770 (Mar. 19, 2008). The number of hours spent on a lawsuit are considered unreasonable if they are "excessive, redundant, or otherwise unnecessary." *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (adopting report and recommendation) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)). "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Finkel v. Captre Elec. Supply Co.*, No. 14-CV-3584, 2015 WL 5316257, at *5 (E.D.N.Y. July 31, 2015) (quotation omitted),

*report and recommendation adopted*, 2015 WL 5330388 (Sept. 11, 2015).

Turning first to the reasonable hourly rate, the Court first examines the experience and qualifications of counsel seeking the fee award. "[R]easonable hourly rates in this district for ERISA matters have ranged from $300 to $450 for partners[.]" *Id.* at *6. "However, 'courts have accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range.'" *D. Gangi Contracting Corp.*, 2019 WL 1130729, at *8 (quoting *Captre Elec. Supply Co.*, 2015 WL 5316257, at *6).

Plaintiffs' counsel Mr. Steinberg has been practicing this field of law since 1995, (Steinberg Aff. ¶ 15), and he is a partner at his firm, Brady McGuire & Steinberg, (*id.* ¶ 1). Other Courts in this District have awarded him an hourly rate of $380. *E.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. Carlo Lizza & Sons Paving, Inc.*, No. 19-CV-2461, 2019 WL 5694053, at *7 (E.D.N.Y. Aug. 22, 2019) (recommending an hourly rate of $380), *report and recommendation adopted*, Order (Sept. 30, 2019); *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of the Int'l Union of Operating Eng'rs Loc. 14-14B v. Coastal Envtl. Grp. Inc.,* No. 18-CV-5773, 2019 WL 4603805, at *13–14 (E.D.N.Y. Sep. 5, 2019) (same), *report and recommendation adopted*, 2019 WL 4602851 (Sept. 23, 2019); (*see also* Mem. at 12–13 (collecting cases)). The Court agrees with the awards in these cases and finds an award of $380 per hour reasonable.

Turning next to the time expended, Mr. Steinberg spent 1.5 hours drafting and filing the Complaint and 7.5 hours drafting and filing the default judgment papers for a total of 9 hours. (Hours Expended by Counsel ("Time Sheet"), attached as Ex. L to

Steinberg Aff., Dkt. No. 12). Courts have found similar numbers of hours reasonable for ERISA default judgments. *See, e.g.*, *D. Gangi Contracting Corp.*, 2019 WL 1130729, at *9 (finding 10.7 hours to be reasonable in an ERISA default judgment case). Plaintiffs' counsel submitted "reconstructed time records" based on his original, contemporaneous time sheets to support the attorney's fee request. (*See* Time Sheet; Steinberg Aff. ¶ 16 ("My reconstructed time records are annexed hereto[.]"); Mem. at 11 ("The documentation submitted by counsel . . . is a reconstructed record of original time sheets made contemporaneously with the services performed[.]")). Courts have accepted such documentation as sufficient evidence for an award of attorney's fees. *See Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs, Loc. 14-14B v. Superior Site Work, Inc.*, No. 15-CV-543, 2017 WL 639248, at *7 n.13 (E.D.N.Y. Feb. 16, 2017) ("[C]ourts recognize that '[a]ttorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous [time] records . . . suffice to permit recovery of attorneys' fees[.]'" (second alteration in original) (quoting *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991))).

Therefore, based on the hourly rate and the number of hours billed on this matter set forth above, the Court recommends that the Plaintiffs be awarded $3,420.00 in attorney's fees.

B. Costs

Plaintiffs seek reimbursement for costs of $400 in court filing fees and $60 in service of process fees. (*See* Statement of Damages; Steinberg Aff. ¶ 14(g)).

ERISA provides for a recovery of costs. 29 U.S.C. § 1132(g)(2)(D); *Detore Elec. Constr. Co.*, 2012 WL 1077796, at *12 ("An award of reasonable costs is mandatory in a

successful action to recover delinquent contributions[.]").  Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008).  Only those costs that are tied to "'identifiable, out-of-pocket disbursements'" are recoverable.  *Keun-Jae Moon v. Joon Gab Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir. 1987)).

Filing fees are recoverable without supporting documentation if verified by the docket.  *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (adopting report and recommendation in part); *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *11 (S.D.N.Y. Mar. 29, 2017) (noting that the filing fee is "a fact of which the Court can take judicial notice"), *report and recommendation adopted*, 2017 WL 1906902 (May 9, 2017).  Although Plaintiffs did not submit an invoice for the clerk's filing fee, the docket indicates the filing fee was paid. (Dkt. No. 1).  Plaintiffs are, therefore, awarded the $400 filing fee.  *See, e.g.*, *John v. DeMaio*, No. 15-CV-6094, 2016 WL 7469862, at *12 (E.D.N.Y. Sept. 29, 2016) (awarding plaintiff the filing fee based on judicial notice of the docket), *report and recommendation adopted*, 2016 WL 7410656 (Dec. 22, 2016).

Process server fees are also recoverable but must be supported by documentation.  *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017) ("[F]ailure to provide adequate documentation of costs incurred will limit, or even defeat, recovery."), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 174714 (Oct. 18, 2017); *Sheldon v. Plot Commerce*, No. 15-CV-5885, 2016 WL 5107072, at *20 (E.D.N.Y. Aug. 26, 2016)

(recommending the costs for serving defendant "be denied due to lack of adequate documentation"), *report and recommendation adopted*, 2016 WL 5107058 (Sept. 19, 2016). Plaintiffs provided a process server receipt indicating the cost of service was $60. (*See* Invoice for Professional Services dated Aug. 22, 2019, attached as Ex. K to Steinberg Aff., Dkt. No. 12). The Court finds it appropriate to award this cost.

Therefore, the Court recommends an award of $460.00 in total costs.

C.     Audit Fees

Finally, Plaintiffs seek $3,927.95 in audit fees. (Statement of Damages; Steinberg Aff. ¶ 14(f)).

"Although 29 U.S.C. § 1132(g)(2) does not expressly provide for an award of audit fees, . . . courts have used section 1132(g)(2)(E), which provides for 'such other legal or equitable relief as the court deems appropriate,' as a basis for awarding audit fees." *L & M Larjo Co.*, 2006 WL 2795348, at *8 (quoting 29 U.S.C. § 1132(g)(2)(E)). When agreements between the parties provide for an award of audit fees, recovery is generally appropriate. *See id.*; *e.g.*, *Martone v. HST Roofing, Inc.*, No. 03-CV-4165, 2007 WL 595054, at *4 (E.D.N.Y. Feb. 22, 2007) (adopting report and recommendation).

The Trust Agreements provide that Northeast Industrial is responsible for audit fees if "found to be delinquent in the payment of fringe benefit contributions." (Annuity Fund Trust Agreement Amendment; Welfare Fund Trust Amendment art. VII, § 8; Apprenticeship Fund Trust Agreement Amendment art. V, § 6; Pension Fund Trust Agreement art. IV, § 4.5(a), (e)). Plaintiffs have submitted an invoice of the audit costs indicating that auditors worked a total of 37.21 hours and charged a total of $3,927.95. (*See* Payroll Audit Invoice dated Aug. 27, 2019, attached as Ex. J to Steinberg Aff., Dkt. No. 12). The Court recommends awarding Plaintiffs $3,927.95 in audit fees. *See, e.g.*,

*Gesualdi v. MBM Indus., Inc.*, No. 10-CV-2607, 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010) (awarding $4,260 in audit fees); *Martone*, 2007 WL 595054, at *4 (awarding $4,940 in audit fees).

<u>CONCLUSION</u>

For the reasons described above, the Court respectfully recommends that default judgment be entered against Northeast Industrial, and Northeast Industrial be ordered to pay the following:

1. $20,525.00 in delinquent ERISA contributions;

2. $1,660.44 in unpaid supplemental union dues and political action committee payments;

3. $2,185.78 in interest on delinquent ERISA contributions through April 9, 2019, plus interest calculated by the Clerk of Court from April 10, 2019 through the date of judgment at a rate of $3.73 per day;

4. Interest on unpaid supplemental union dues and political action committee payments as calculated by the Clerk of Court from October 1, 2016, through the date of entry of judgment at a rate of $0.41 per day;

5. $2,052.50 in liquidated damages;

6. $3,420.00 in attorneys' fees;

7. $460.00 in costs; and

8. $3,927.95 in audit fees.

This totals $34,231.67, plus interest of $3.73 per day from April 10, 2019 through the date of final judgment on delinquent ERISA contributions and interest of $0.41 per day from October 1, 2016 through the date of final judgment on delinquent non-ERISA contributions.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision." (quotations omitted)).

Plaintiffs are directed to promptly serve a copy of this Report and Recommendation on Northeast Industrial and file proof of such service on the record.

SO ORDERED.

*/s/ Sanket J. Bulsara* X
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York